**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ROBERT E. ALLEN**, *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 17-1951 (ESH)** |
| **JERRY BROWN**, *et al.*, | |
| **Defendants**. | |

## MEMORANDUM OPINION

Plaintiffs, twenty-three federal police officers stationed at the Veterans Affairs ("VA") Medical Center in Washington, D.C., bring this action against the Chief of Police at the VA Medical Center, Jerry Brown; the VA Medical Center Director, Brian Hawkins; and the Secretary of United States Department of Veterans Affairs. They allege that defendants secretly installed audio and video recording devices at several non-public locations within the VA Medical Center, in violation of federal and state wiretapping statutes, state civil conspiracy law, and the Fourth Amendment. Defendants have filed a motion to dismiss or, in the alternative, for summary judgment. For the reasons stated herein, defendants' motion will be denied as to the federal wiretapping claim and the Fourth Amendment claim (Counts 1 and 4) but granted as to the state law claims (Counts 2 and 3).

## BACKGROUND

**I.      FACTUAL BACKGROUND**

Unless otherwise noted, the facts set forth herein are taken from the allegations of the

amended complaint or undisputed evidence in the record.[1]

### A.    Facts Alleged in the Amended Complaint[2]

Plaintiffs are police officers employed by the United States Department of Veterans

Affairs and stationed at the VA Medical Center, under the command of Chief of Police Jerry

Brown.  (Am. Compl. ¶¶ 1-24, ECF No. 5.)  In October 2013, Chief Brown allegedly

"conspired" with the Medical Director, Brian Hawkins, to install hidden cameras, with both

audio and video recording capability, in at least three non-public locations within the VA

Medical Center – the Police Control Room, the Police Report Writing Room, and the Watch

Commander's Office.  (*Id.* ¶¶ 30, 52.)  Before arranging for the installation of these devices,

Chief Brown did not obtain a warrant or comply with the applicable rules in the VA Handbook.[3]

---

[1] This evidence consists of the exhibits and declarations submitted by defendants and plaintiffs in support of and in opposition to defendants' motion for summary judgment.  (*See* Defs.' Statement of Material Facts, ECF No. 11; Pls.' Resp. to Defs.' Statement, ECF No. 15-1; Defs.' Exs. A-K, ECF Nos. 10-1 to 10-11; Pls.' Exs. 1-11, ECF No. 15-3 to 15-13.)

[2] The first amended complaint, which was filed on September 28, 2017, before defendants responded to the initial complaint, is the operative pleading.  The initial complaint was filed on September 22, 2017.  (*See* Compl., ECF No. 1.)

[3] According to the complaint, the VA Handbook includes the following statements:

> The use of body microphones and recording devices are authorized for investigative purposes only. This use must be authorized by the Deputy Assistant Secretary for Security and Law Enforcement.
> . . .
>
> Use of any device to overhear or record conversations without the participants' consent must be accomplished in accordance with the U.S. Attorney General's guidelines on communication interception by Federal law enforcement personnel.
>
> . . .
>
> The use of recording devices is not authorized for the routine taping of conversations during patrol and other duty activities.

(Am. Compl. ¶¶ 46, 48, 50 (citing Sections 6(b)(l), (2) and (3) of the VA Handbook).)

(*See id.* ¶¶ 46-49, 74.)  He did, however, send a memorandum, dated October 23, 2013, to

Director Hawkins, requesting permission "to install two covert video surveillance devices" – one

in the Police Control Room and the other in the Police Report Writing Room.  (*See* Defs.' Ex. A

(copy of 10/23/2013 memorandum); *see also* Am. Compl. ¶ 53.)  According to this

memorandum, the devices were to be used for a period of 90 days to investigate "suspicious

activity" between the evening dispatcher and other police officers.  (*See* Defs.' Ex. A.)  Director

Hawkins approved Chief Brown's request, and cameras were subsequently installed in these two

locations.  (*See* Defs.' Exs. A, J (Decl. of Chief Brown) ("Brown Decl."); *see also* Am. Compl.

¶¶ 36, 39, 53.)  There is no mention of the Watch Commander's Office in this memorandum, and

defendants deny that a camera was ever installed in that location.  (*See* Brown Decl. ¶¶ 3-4.)

The Police Control Room is a room where every VA police officer spends time

throughout the day.  (Am. Compl. ¶ 33.)  Other individuals, including cleaning staff, other staff

members, various contractors, and patients of the medical facility, also have access to this room.

(*Id.* ¶ 34.)  The Report Writing Room is used by police officers daily for a variety of purposes,

including the writing of reports and as an alternative break room.  (*Id.* ¶ 40.)  The Watch

Commander's Office is "used, in part, as a changing room for both male and female officers."

(*Id.* ¶ 43.)  In each of these rooms, individuals could stop talking when other individuals entered

the room or doors could be closed to prevent individuals from outside the room from overhearing

conversations.  (*Id.* ¶ 54.)

VA police officers first learned of the possible existence of hidden cameras on January

19, 2014, when Officer Gentry, a plaintiff, "informed various officers that [Chief] Brown might

have secret cameras installed and may be monitoring their activities."  (*Id.* ¶ 35.)  A few days

later, on January 24, 2014, several officers discovered the camera in the Police Control Room.

(*Id*. ¶ 36.)  The camera was "covertly mounted on a support bracket for the CCTV monitors with a microphone hidden behind the monitors."  (*Id*.)  "While the camera and microphone had indicator lights, those lights were covered with black electric tape."  (*Id*.)  Upon discovery, one officer "covered the microphone portion of the camera," while the officers who were present "discussed what to do about the camera and microphone."  (*Id*.)  As soon as the microphone was covered, Chief Brown appeared in the Police Control Room, "demanding to know what the officers were doing in the room and ordered all attending officers to draft statements regarding what was happening in the control room."  (*Id*. ¶¶ 37-38.)  In March 2014, a hidden camera with a microphone unit was discovered in the Police Report Writing Room.[4]  (*See id*. ¶ 39.)  In January 2015, officers found a hidden camera with a microphone unit in the Watch Commander's Office (Room 1E229B).  (*Id*. ¶ 42.)

During April 2014, in response to complaints, the VA Medical Center Administrative Investigation Board conducted an investigation into an allegedly hostile work environment fostered by Chief Brown.  (*See* Defs.' Ex. F, at 1, 8 (transcript of 4/23/2014 interview under oath of Chief Brown) ("Brown Tr.").)  Chief Brown and Director Hawkins were both interviewed as part of this investigation.  (*See* Defs.' Ex. F; Defs.' Ex. G (transcript of 4/22/2014 interview under oath of Director Hawkins) ("Hawkins' Tr.").)  One aspect of this investigation concerned the hidden cameras that had been discovered in the Police Report Writing Room and the Police Control Room. (*See* Brown Tr. at 11-13, 23-26.)  During his interview, Chief Brown testified that he had sought permission from Director Hawkins to install these cameras "as part of a

---

[4] The complaint further alleges that "On March 22, 2014, the footage and audio recording of this camera was used by Defendant Brown to administer discipline against *Plaintiff* Rodriguez-Soto which included a two-week suspension without pay."  (Am. Compl. ¶ 41 (emphasis added).)  However, while Rodriquez-Soto was a plaintiff in an earlier case, *see infra*, he is not a plaintiff here.

criminal investigation, suspicion of criminal activity, not for monitoring the performance of the work of the employee." (Brown Tr. at 12.) He further testified that he had never requested that the audio recording capabilities of the hidden devices be activated, and that the company who installed the equipment told him that they were not. (*Id*. at 23-24.) Director Hawkins testified during his interview that he had authorized the video surveillance requested by Chief Brown due to Chief Brown's concerns about potential criminal activity and workplace misconduct. (Hawkins Tr. at 6.) He further testified that he did not authorize any audio. (*See id*. at 14.) The Board also interviewed Mark Bradford, an employee of the company that installed the surveillance equipment. (*See* Defs.' Ex. K (transcript of 4/22/2014 interview under oath of Mark Bradford) ("Bradford Tr.").) He testified that the audio capabilities of the devices his company installed were not activated. (*See id*. at 8.)[5] Based on the above-described testimony, along with the October 2013 memorandum, and Chief Brown's declaration filed in this case, defendants deny that the audio capabilities of the cameras in the Police Control Room and the Police Report Writing Room were activated or that any audio recordings were ever made. (*See* Defs.' Facts ¶¶ 8, 11; Brown Decl. ¶¶ 3-4, 10.)

On November 4, 2014, the Veterans Health Administration (VHA) issued Directive 1078, entitled "Privacy of Persons Regarding Photographs, Digital Images, and Video or Audio Recordings." (*See* Pls.' Ex. 11.) The stated purpose of the directive was to "establish[] VHA policy defining the parameters under which members of the VHA workforce may produce and use photographs, digital images, and video or audio recordings of all persons." (*Id*. at 1.) The

_____

[5] In addition to Chief Brown, Director Hawkins, and Mark Bradford, defendants have submitted transcripts of the interviews of Officer Luis Rodriguez-Soto (Defs.' Ex. H); Deputy Chief of Police Cleveland Walls (Defs.' Ex. I); and plaintiff Officer Thomas Rego (Defs.' Ex. K). The record does not include the results of this investigation

Directive provides that:

> If the use of equipment to covertly produce photographs, digital images, or video or audio recordings is to investigate suspected cases of VHA workforce misconduct, the VA medical facility Director, the Regional Counsel, and the chief human resources officer of the facility all must approve this use before the equipment may be used.

(*Id.* at A-2.)

On March 2, 2015, video footage from the camera in the Police Report Writing Room was used by Chief Brown to request disciplinary action against two of the plaintiffs, Officers Kevin Price and Anthony Green, for sleeping on duty and lack of candor in pretending to have been on patrol while actually sleeping. (*See* Defs.' Ex. B.[6])

The cameras in these three locations were used to "ma[k]e audio and video recordings of all personnel who utilized these rooms," which "were delivered on a real-time basis to [Chief] Brown's office." (Am. Compl. ¶¶ 45, 56.) Plaintiffs believe that "these cameras remain[ed] in use as of the filing of this action." (*Id.* ¶ 44.) They also "suspect the existence of other audio and video recording devices." (*Id.* ¶ 57.) Defendants deny that the two cameras they admit to installing remained in use until this lawsuit was filed. They claim that the camera in the Police Control Room "was only operational until January 29, 2014," and that the camera in the Police Report Writing Room "was operational until March 23, 2014." (*See* Brown Decl. ¶¶ 3-4, 10-13.)

---

[6] Defendants' Exhibit B consists of two memos sent by Chief Brown to Human Resources requesting "appropriate disciplinary action" for Officers Kevin Price and Anthony Green. According to the memoranda, which attached still video pictures, there was video obtained from the "covert video recording device" in the Police Report Writing Room (1) showing Price sleeping while on duty (for approx. 3 minutes) on March 15, 2014, and a "lack of candor" infraction that same day because he indicated that he was on patrol during the time he was sleeping; and (2) showing Green sleeping while on duty (for approx. 37 minutes) on Feb. 22, 2014, and a "lack of candor" infraction that same day because he indicated that he was on patrol during the time he was sleeping.

## II. PROCEDURAL HISTORY

### A. 2015 Litigation

In 2015, based on the events described above, 24 VA Medical Center police officers filed suit against Chief Brown, Director Hawkins, and the Secretary of the VA, claiming that the hidden audio and video recording devices in the VA Medical Center violated federal and state law. (*See* Compl., *Allen v. Brown*, No. 15-cv-0969 (D.D.C. June 22, 2015) ("2015 Litigation").)[7] The complaint included five counts: Count I claimed that Chief Brown and Director Hawkins had violated the federal wiretapping statute, *see* 18 U.S.C. §§ 2510, *et seq.*; Count II claimed they had violated the D.C. wiretapping statute, *see* D.C. Code §§ 23-542; Count III claimed that their actions constituted an unlawful civil conspiracy under D.C. law; Count IV claimed that Chief Brown's actions constituted an unlawful search and seizure under the Fourth Amendment and that he was personally liable for damages under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); and Court V claimed that the Secretary of the VA was liable for Chief Brown's actions under the Federal Tort Claims Act ("FTCA"). (Compl. ¶¶ 96-98, 2015 Litigation.)

Defendants moved to dismiss or, in the alternative, for summary judgment. The Court denied the motion except as to Count V, the FTCA claim against the Secretary of the VA, which it dismissed on the ground that the only proper defendant for an FTCA claim is the United States, and plaintiffs had not sought to substitute the United States as the defendant for that count. *See Allen v. Brown*, 185 F. Supp. 3d 1 (D.D.C. 2016).[8]

_____

[7] Johnson Controls, Inc., the outside contractor that installed at least some of the surveillance devices, was initially named as a defendant, but before any motions were filed, plaintiffs voluntarily dismissed with prejudice all the claims against Johnson. (*See* Notice of Voluntary Dismissal with Prejudice, 2015 Litigation (Sept. 28, 2015), ECF No. 15).)

[8] In a footnote, the Court observed that based on the evidence submitted by defendants, it

After ruling on defendants' motion, the Court held an initial scheduling conference and entered a scheduling order, which provided that discovery was to be completed by February 1, 2017.  (*See* Scheduling Order, 2015 Litigation, ECF No. 36.)  However, on August 1, 2016, plaintiffs' attorneys filed a motion to withdraw as counsel.  (*See* Mot. to Withdraw, 2015 Litigation, ECF No. 38.)  The motion informed the Court that on June 27, 2016, they had sent a letter, along with their motion to withdraw, to each plaintiff advising that they intended to withdraw and that plaintiffs could either have new counsel enter an appearance or notify the Clerk if they intended to proceed without counsel.  (*Id.*)

The Court set a hearing on the motion to withdraw for September 8, 2016.  (*See* Order, 2015 Litigation, ECF No. 39.)  In its Order, the Court directed counsel to ensure that each plaintiff received notice of the hearing and was advised either to appear in person or retain new counsel to appear on his/her behalf.  (*Id.*)  The Court also ordered the Clerk of Court to mail copies of the Order to each plaintiff.  (*Id.*)

No plaintiff took action prior to the hearing or appeared at the hearing; nor did any new counsel appear.  At the hearing, after a discussion with plaintiffs' counsel, the Court determined that it would grant the motion to withdraw.  (*See* Tr. of 9/8/2016 Mot. Hrg., 2015 Litigation ("9/8/16 Tr.") (COURT: "I'm going to grant the motion to withdraw as counsel.  I understand why.  I don't think I can keep him in a case when he wants to – the way I view it is you want to dismiss the case and your clients won't agree."  COUNSEL FOR PLAINTIFFS: "That is fair, Your Honor.").)

In light of plaintiffs' failure to appear or retain new counsel, defendants orally moved the

---

appeared that if plaintiffs had tried to bring a claim against the United States under the FTCA, it would likely be subject to dismissal for failure to exhaust administrative remedies as required by 28 U.S.C. § 2675(a).  *See Allen v. Brown*, 185 F. Supp. 3d at 9 n.9.

Court to dismiss the case for lack of prosecution. (*See id.* (COUNSEL FOR DEFENDANTS: "[G]iven [plaintiffs' failure to provide initial disclosures] and given the lack of interest in coming to the status hearing today[,] we[] would ask for the record that the matter be dismissed for lack of prosecution.").) The Court decided to defer ruling on defendants' motion until after it had issued an order to show cause, giving plaintiffs one final chance to either retain new counsel or decide to proceed *pro se*. (*Id.*) If plaintiffs failed to respond to the order to show cause, the Court indicated that it would dismiss for failure to prosecute. (*Id.* ("I will set a date certain for dismissal.").) The Court noted, and defendants' counsel verbally acknowledged that it understood, that such a dismissal would be without prejudice. (*Id.* (COURT: "If it is dismissed for lack of prosecution, it is without prejudice, I think." COUNSEL: "Understood, Your Honor.").)

The Court's order to show cause, issued that same day, gave plaintiffs until September 23, 2016, to show cause why the matter should not be dismissed for failure to prosecute. (*See* Order, 2015 Litigation, ECF No. 41.) The Clerk of Court mailed a copy of the order to each plaintiff. (*Id.*) On September 27, 2016, having received no response from any plaintiff, the Court dismissed all remaining claims in the 2015 Litigation for failure to prosecute, but its Order failed to indicate that the dismissal was without prejudice. (*See* Order, 2015 Litigation (Sept. 17, 2016), ECF No. 42.)

## B.      Current Litigation

On September 22, 2017, almost two years after the Court dismissed the 2015 Litigation, the current case was filed by different counsel. Of the 23 plaintiffs, 21 had been plaintiffs in the 2015 Litigation. The complaint again named Chief Brown, Director Hawkins, and the Secretary of the VA as defendants, and it included counts that mirrored Counts I-IV from the 2015 Litigation. Specifically, Count 1 claims that Chief Brown and Director Hawkins violated the

9

federal wiretapping statute, *see* 18 U.S.C. §§ 2510, *et seq.*; Count 2 claims that they violated the District of Columbia wiretapping statute, D.C. Code §§ 23-542; Count 3 claims that they engaged in an unlawful civil conspiracy under District of Columbia law to violate federal and state wiretapping statutes; and Count 4 claims that Chief Brown's actions constituted an unlawful search and seizure in violation of the Fourth Amendment to the United States Constitution, for which he is personally liable under *Bivens*. (*See* Am. Compl. ¶¶ 59-78.) It did not include a count mirroring Count V, the FTCA claim against the Secretary, which the Court had dismissed for failure to name the proper defendant.

On January 17, 2018, defendants filed a motion to dismiss or, in the alternative, for summary judgment. (*See* Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J., Jan 17, 2018, ECF No. 11 ("Defs.' Mot.").) Attached to their motion was a certification by the United States, pursuant to 28 U.S.C. § 2679(d), that "Jerry Brown and Brian Hawkins were acting within the scope of their employment as employees of the United States at the time of the alleged incidents." (Westfall Certification, ECF No. 10-12.) This certification presumptively substitutes the United States as the sole defendant for the state law tort claims, Counts 2 and 3, and converts those claims into claims under the Federal Tort Claims Act ("FTCA"). (Defs.' Mot. at 1 n.1; Defs.' Mem. in Support of Defs.' Mot. at 2 ("Defs.' Mem.") ("The United States has been substituted for the sole defendant in Counts 2 and 3 by virtue of the accompanying Certification under 28 U.S.C. § 2679(d).").) Plaintiffs filed an opposition to defendants' motion, including a challenge to the Westfall Certification and a Rule 56(d) Declaration, on February 28, 2018 (*see* Pls.' Opp'n, ECF No. 15), and defendants filed a reply on March 27, 2018 (*see* Defs.' Reply, ECF No. 16).

# ANALYSIS

Defendants' motion to dismiss or, in the alternative, for summary judgment argues (1) that the state law claims (Counts 2 and 3) should be dismissed for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), due to plaintiffs' failure to exhaust administrative remedies as required by the FTCA; (2) that all of the claims should be dismissed for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), either because the claims are barred by the doctrine of res judicata, the FTCA's judgment bar, *see* 28 U.S.C. 2676, or the applicable statute of limitations; and (3) for any claims that are not dismissed, defendants are entitled to summary judgment, *see* Fed. R. Civ. P. 56. It also points out, and plaintiffs do not disagree, that no claim is brought against the Secretary of the VA, so he should be dismissed as a defendant.

## I. LEGAL STANDARDS

### A. Subject Matter Jurisdiction (Rule 12(b)(1))

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a claim for relief when the complaint "lack[s] . . . subject-matter jurisdiction." The plaintiff "bears the burden of demonstrating that the Court has subject matter jurisdiction." *See Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). A court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharm. v. FDA,* 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### B. Failure to State a Claim (Rule 12(b)(6))

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a claim for relief when the complaint "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facts alleged must "allow

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The court must 'accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor.'" *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quoting *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015)); *Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017). "'In determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice.'" *Hurd*, 864 F. 3d at 678 (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)); *see also Crawford v. Duke*, 867 F.3d 103, 108 (D.C. Cir. 2017)

### C.    Summary Judgment (Rule 56)

Under Federal Rule of Civil Procedure 56, "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery," "[u]nless a different time is set by local rule or the court orders otherwise." Fed. R. Civ. P. 56(b). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that could change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate only when the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). The moving party bears the responsibility of showing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this standard, the burden of proof shifts to the non-movant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. In determining whether there are genuine disputes as

to material facts, courts must "view[] the evidence in the light most favorable to the non-movant and draw[] all reasonable inferences accordingly." *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1113 (D.C. Cir. 2016). If, even then, "no reasonable jury could reach a verdict in her favor," summary judgment is properly granted. *Id.* At the summary judgment stage, a court is "'not to make credibility determinations or weigh the evidence.'" *DeJesus v. WP Co. LLC*, 841 F.3d 527, 531 (D.C. Cir. 2016) (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)); *see also Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). To prevail on a Rule 56(d) request, the "movant must submit an affidavit which states with sufficient particularity why additional discovery is necessary." *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (internal quotation marks omitted). The affidavit must satisfy three criteria: "(1) '[I]t must outline the particular facts [the non-movant] intends to discover and describe why those facts are necessary to the litigation'; (2) 'it must explain why [the non-movant] could not produce the facts in opposition to the motion for summary judgment'; and (3) 'it must show the information is in fact discoverable." *United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014) (quoting *Convertino*, 684 F.3d at 99-100) (other internal quotation marks and citations omitted); *see also Smith v. United States*, 843 F.3d 509, 513 (D.C. Cir. 2016) ("Rule 56(d) affiant must, among other things, 'outline the particular facts he intends to discover and describe

why those facts are necessary to the litigation,' and he must explain why he cannot provide evidence to counter his opponent's summary judgment motion." (quoting *Convertino*, 684 F.3d at 99-100)).

## II.    SUBJECT MATTER JURISDICTION (COUNTS 2 & 3)

Defendants argue that Counts 2 and 3 should be dismissed for lack of subject matter jurisdiction because (1) the claims "fall under the FTCA" now that the United States has been substituted as the sole defendant; and (2) "those claims have not been timely exhausted through the requisite administrative remedies under the FTCA," *see* 28 U.S.C. § 2675(a).  (Defs.' Mem. at 8.)  Plaintiffs first contest the Westfall Certifications, arguing that scope of employment disputes are for a jury to decide or, at least, should not be resolved before discovery.  In the alternative, plaintiffs argue that even if Counts 2 and 3 are converted to FTCA claims against the United States, they have either satisfied the statutory exhaustion requirement or they are entitled to discovery to determine whether they have met the requirement.[9]

### A.    Westfall Certifications/Scope of Employment

"The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity" from liability for "injury or loss of property, or personal injury or death arising or resulting from the

_____

[9] It is well-established, and plaintiffs do not dispute, that if Counts 2 and 3 are converted to FTCA claims, the statutory requirement of administrative exhaustion applies.  *See, e.g.*, *Wasserman v. Rodacker*, 557 F.3d 635, 640 (D.C. Cir. 2009) ("Upon substitution of the United States as a party defendant, the Westfall Act dictates that the action 'shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and shall be subject to the limitations and exceptions applicable to those actions.' 28 U.S.C. § 2679(d)(4).  Among these limitations is the requirement that a plaintiff present his claim to the appropriate federal agency and receive a denial of the claim in writing before his tort action may proceed. 28 U.S.C. § 2675(a)."); *see also Simpkins v. D.C. Gov't*, 108 F.3d 366, 370–71 (D.C. Cir. 1997) (same).

negligent or wrongful act or omission . . . while acting within the scope of his office or employment." *Osborn v. Haley,* 549 U.S. 225, 229 (2007); 28 U.S.C. § 2679(b)(1).[10] Thus, under the Westfall Act, "when a federal employee is named in a tort suit, the Attorney General or his designee may certify that the employee was 'acting within the scope of his office or employment at the time of the incident out of which the claim arose.'" *Wuterich v. Murtha*, 562 F.3d 375, 380 (D.C. Cir. 2009) (quoting 28 U.S.C. § 2679(d)(1)).[11] Generally, "[u]pon the Attorney General's certification, the federal employee is dismissed from the case and the United States is substituted as the defendant in place of the employee," and "[t]hereafter, the suit is governed by the Federal Tort Claims Act ("FTCA")." *Id.*; *see* 28 U.S.C. § 2679(d)(4).[12]

However, "[a] plaintiff may contest the Attorney General's scope-of-employment

---

[10] The immunity provided by the Westfall Act "does not extend or apply to a civil action against an employee of the Government--(A) which is brought for a violation of the Constitution of the United States, or (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." 28 U.S.C. § 2679(b)(2).

[11] In full, § 2679(d)(1) provides that:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).

[12] In full, § 2679(d)(4) provides that:

> Upon certification, any action or proceeding subject to paragraph (1), (2), or (3) shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and shall be subject to the limitations and exceptions applicable to those actions.

28 U.S.C. § 2679(d)(4).

certification before a district court." *Wuterich*, 562 F.3d at 381; s*ee also Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995) ("[T]he Attorney General's certification that a federal employee was acting within the scope of his employment . . . does not conclusively establish as correct the substitution of the United States as defendant in place of the employee."). "Once a plaintiff advances this argument, the certification 'constitute[s] prima facie evidence that the employee was acting within the scope of his employment.'" *Wuterich*, 562 F.3d at 381 (quoting *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006)); *see also Jacobs v. Vrobel*, 724 F.3d 217, 220 (D.C. Cir. 2013) (same). "To rebut the certification and obtain discovery, a plaintiff must 'alleg[e] sufficient facts that, taken as true, would establish that the defendant['s] actions exceeded the scope of [his] employment.'" *Wuterich*, 562 F.3d at 381 (quoting *Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003)); *see also Stokes*, 327 F.3d at 1215 (plaintiff's "burden [i]s to raise a material dispute"). If the complaint itself does not include the necessary allegations, courts may look to see whether plaintiffs have satisfied their burden by including such allegations in their response to the motion to dismiss. *See, e.g*., *Jackson v. United States*, 857 F. Supp. 2d 158, 160 (D.D.C. 2012) (considering "plaintiff's complaint and the additional facts included in her response to the motion to dismiss"). "'Not every complaint will warrant further inquiry into the scope-of-employment issue.'" *Wuterich*, 562 F.3d at 381 (quoting *Stokes*, 327 F.3d at 1216). "Consequently, where a plaintiff fails to allege sufficient facts to rebut the certification, the United States must be substituted as the defendant because the federal employee is absolutely immune from suit." *Id.*

Plaintiffs contest the Westfall Certification and seek discovery on the scope of employment issue, but they have failed to allege sufficient facts to meet their burden. Their burden is not onerous, but they have failed to allege facts that, if true, would establish that Chief

Brown and Director Hawkins were not acting within the scope of their employment.[13]

"In determining whether an employee acted within the scope of his employment, [courts] consider the substantive law of the jurisdiction where the employment relationship exists—here, the law of the District of Columbia." *Jacobs*, 724 F.3d at 221; *see also Majano v. United States,* 469 F.3d 138, 141 (D.C. Cir. 2006) (same). "As its framework for determining whether an employee acted within the scope of employment, the Court of Appeals for the District of Columbia looks to the Restatement (Second) of Agency." *Majano*, 469 F.3d at 141 (internal quotations omitted). "Under the Restatement, an employee's conduct falls within the scope of employment if: 1) it is of the kind of conduct he is employed to perform; 2) it occurs substantially within the authorized time and space limits; 3) it is actuated, at least in part, by a purpose to serve the master; and 4) if force is intentionally used by the servant against another, the use of force is not unexpected by the master." *Id.* "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Restatement (Second) of Agency § 228. "The test is 'objective' and is 'based on all the facts and circumstances.'" *Jacobs*, 724 F.3d at 221 (quoting *Weinberg v. Johnson,* 518 A.2d 985, 991 (D.C. 1986)). In addition, "the District has broadly interpreted the test" such that "'[t]he scope-of-employment test often is akin to asking whether the defendant merely was on duty or on the job when committing the alleged tort.'" *Id.* (quoting *Harbury v. Hayden,* 522 F.3d 413, 422 n.4 (D.C. Cir. 2008)).

---

[13] Plaintiffs contend that they are entitled to discovery to enable them to ascertain the factual basis for the Certification because it "provid[ed] no factual support for [the] allegation that the individual defendants were acting within the scope of their employment." (*See* Pls.' Opp'n at 13.) But they cite no authority for the proposition that defendants are required to include a factual basis in a Westfall Certification. *See* 28 U.S.C. § 2679.

Plaintiffs do not argue that the complaint alleges facts that if true would establish that Chief Brown or Director Hawkins' challenged conduct was "different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Restatement (Second) of Agency § 228. Nor do they include additional facts or make any argument in their response to justify their challenge to the Westfall Certification. On the contrary, the only allegation in the complaint as to scope of employment appears within Count 4, and it avers that Chief Brown's actions were within the scope of employment. (*See* Am. Compl. ¶ 76 ("Plaintiffs' harm was caused by the wrongful acts of Defendant Brown while Defendant Brown was acting within the scope of his employment as an agent of the Department of Veterans Affairs.").)

Accordingly, the Court will accept the certifications as dispositive. *See, e.g.*, *Jackson*, 857 F. Supp. 2d at 160–61 ("Upon consideration of plaintiff's complaint and the additional facts included in her response to the motion to dismiss, the Court concludes that she has not met this standard since she provides no facts whatsoever but merely refers to the conduct as 'unethical, unprofessional [and] unjustified.'"); *Taylor v. Clark*, 821 F. Supp. 370, 373 (D.D.C. 2011) ("Here, the Court finds that the plaintiff has failed to rebut the United States' scope-of-employment certification."); *Hill v. United States*, 562 F. Supp. 2d 131, 135–36 (D.D.C. 2008) ("Because [plaintiff] has failed to allege specific facts or provide any justification for why limited discovery on the scope-of-employment issue would be warranted, her unsubstantiated request for such discovery will be denied.") The United States is therefore substituted as the sole defendant for Counts 2 and 3, and those claims are governed by the FTCA.

### B.     Failure to Exhaust

Having concluded that the United States is properly substituted as the sole defendant for Counts 2 and 3, the next question is whether, as defendants maintain, those counts should be

dismissed without prejudice for failure to comply with the FTCA's exhaustion requirement.

The FTCA provides that:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency* and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). "Satisfaction of [Section 2675(a)'s administrative filing requirement] is a jurisdictional prerequisite to the maintenance of a tort suit against the United States." *GAF Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987); *see also Simpkins v. D.C. Gov't*, 108 F.3d 366, 370–71 (D.C. Cir. 1997) ("This court and the other courts of appeals have treated the FTCA's requirement of filing an administrative complaint with the appropriate agency prior to instituting an action as jurisdictional."); *Jackson*, 857 F. Supp. 2d at 161 ("The failure to exhaust prior to filing suit requires dismissal of the case for lack of jurisdiction."). "A plaintiff must therefore plead administrative exhaustion in an FTCA case." *See Colbert v. U.S. Postal Service*, 831 F. Supp. 2d 240, 243 (D.D.C. 2011) (citing Fed. R. Civ. P. 8(a)(1), which requires a plaintiff to plead "a short and plain statement of the grounds for the court's jurisdiction")); *Slate v. District of Columbia*, 79 F. Supp. 3d 225, 233 (D.D.C. 2015) ("A plaintiff must plead grounds for the Court's jurisdiction, *see* Fed. R. Civ. P. 8(a)(1), and thus in an FTCA case a plaintiff must plead administrative exhaustion."); *Clark Cty. Bancorporation v. U.S. Dep't of Treasury*, No. 13-cv-632, 2014 WL 5140004, at *11 (D.D.C. Sept. 19, 2014) (same).

"[A] jurisdictionally adequate presentment is one which provides to the appropriate agency (1) a written statement sufficiently describing the injury to enable the agency to begin its

own investigation, and (2) a sum-certain damages claim." *GAF Corp.*, 818 F.2d at 905; *see also* 28 C.F.R. § 14.2 ("a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident").[14]  In addition, "if there are multiple claimants in the matter, each claimant must individually satisfy the jurisdictional prerequisite of filing a proper claim, unless another is legally entitled to assert such a claim on their behalf." *Muth v. United States*, 1 F.3d 246, 249 (4th Cir. 1993) (internal quotations omitted), *quoted in Tsaknis v. United States*, 517 F. Supp. 2d 295, 297 (D.D.C. 2007); *see also Miango v. Democratic Republic of the Congo*, 243 F. Supp. 3d 113, 132 (D.D.C. 2017) ("in order to meet the FTCA's presentment requirement, each claimant must file his or her own written notice").  This includes "present[ing] government with a definite damage amount for each claim." *Keene Corp. v. United States,* 700 F.2d 836, 842 (2d Cir.1983).  Where, as here, the claims were not initially filed as FTCA claims, a court may also consider whether plaintiffs' briefing in response to defendants' motion "satisfies its

---

[14] The full text of 28 C.F.R. § 14.2(a) reads:

> For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2

exhaustion obligations." *See Clark Cty. Bancorporation*, 2014 WL 5140004, at *11 (considering allegations in the complaint and plaintiffs' briefing); *see also Colbert*, 831 F. Supp. 2d at 243 (same). The failure to plead a jurisdictionally adequate presentment requires dismissal without prejudice for lack of subject matter jurisdiction. *See, e.g. Clark Cty. Bancorporation*, 2014 WL 5140004, at *11 (dismissing for lack of subject-matter jurisdiction after considering allegations in the complaint and plaintiffs' briefing and concluding that no "sum-certain damages claims" were filed); *see also Colbert*, 831 F. Supp. 2d at 243 (dismissing for lack of subject matter jurisdiction where complaint did not allege presentment of claim to the agency and plaintiff did not respond to argument in defendant's motion that complaint should be dismissed for failure to exhaust).

Here, the complaint does not allege that any claims were administratively presented, but in their response to the motion to dismiss plaintiffs point to the following as evidence that "establishes that claims were filed.": (1) defendants' purported "admission" in the Crewe-Allen Declaration that plaintiffs filed administrative claims with the VA (Pls.' Opp'n at 14 (citing Crewe-Allen Decl. ¶ 4, which includes the statement that "[c]ases involving the named plaintiffs were discovered")); and (2) statements in plaintiffs' declarations that they complained about the secret surveillance to someone in the VA or to the Office of the Inspector General (*see* Pls.' Opp'n at 15 (citing Pls.' Exs. 1, 3-5, 7-10 (declarations filed by 8 plaintiffs)).) And to the extent this evidence is insufficient, they argue that "[a]dditional discovery is necessary to gather the Agency's administrative record of these complaints." (Pls.' Opp'n at 15.)

For several reasons, the evidence cited by plaintiffs falls short of alleging a "jurisdictionally adequate presentment." *See GAF Corp.*, 818 F.2d at 905. First, each plaintiff must present his/her own claim, *see, e.g., Miango*, 243 F. Supp. 3d at 132, but here only 8 of the

23 plaintiffs have filed a declaration stating that he or she filed a claim relating to the surveillance. (*See* Pls.' Exs. 1, 3-5, 7-10.) Second, as to those plaintiffs, there is no representation in their declarations, or even in plaintiffs' brief, that the claims complied with the requirement to include "a sum-certain damages claim."[15]

Plaintiffs' alternative argument that they should be given an opportunity to remedy any deficiencies through discovery is not persuasive. As defendants point out, each plaintiff should know if he/she filed a claim and, if so, whether it included a sum-certain damages claim, which is all that they would need to allege to satisfy their burden.

As plaintiffs have failed to plead or allege a jurisdictionally adequate presentment of the claims in Counts 2 and 3 and have presented no persuasive argument for discovery, the Court will dismiss those counts without prejudice for lack of subject matter jurisdiction. *See* 28 U.S.C. § 2679.

## III. FAILURE TO STATE A CLAIM

Defendants next argue that all counts should be dismissed for failure to state a claim. They make the following arguments: (1) due to the dismissal of Counts I through IV in the 2015 Litigation, all of the claims (at least as to the 21 repeat plaintiffs) are barred by the doctrine of res judicata; (2) due to the dismissal of Count V in the 2015 Litigation, the FTCA claim, all of the claims are barred by the FTCA's judgment bar, *see* 28 U.S.C. § 2676; (3) applicable statutes of limitations bar Counts 1, 2 and 3; and (4) Count 3 should be dismissed because there is no viable underlying violation. Having concluded that Counts 2 and 3 must be dismissed for lack of

---

[15] Indeed, according to the Crewe-Allen declaration, none did. (*See* Crewe-Allen Decl. ¶ 4 (attesting that she searched VA records and found cases involving the named plaintiffs but "all such cases involved either Equal Employment Opportunity Commission complaints or adverse administrative action complaints" and "none of the filings in these [discovered] cases c[ould] be construed as complying with the minimal tort claim requirements of 28 C.F.R. § 14.2").)

subject matter jurisdiction, *see supra*, the Court will limit its discussion to the arguments that pertain to Counts 1 and 4.

### A.    Res Judicata

In deciding whether the doctrine of res judicata applies, the Court must consider "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Natural Resources Defense Council v. EPA*, 513 F.3d 257, 260 (D.C. Cir. 2008) (internal quotation marks omitted).  In the 2015 Litigation, Counts I through IV, which are virtually identical to Counts 1 through 4 in the current litigation, were dismissed for lack of prosecution.  The parties dispute whether this dismissal constituted a "final, valid judgment on the merits," which, in turn, they agree, depends on whether the dismissal was with or without prejudice.  The dismissal order did not state whether the dismissal was with or without prejudice.  Thus, relying on Fed. R. Civ. P. 41(b), defendants argue that the dismissal should be treated as a dismissal with prejudice.  Plaintiffs, pointing to Local Civil Rule 83.23, take the opposite view.

For several reasons, the Court agrees with plaintiffs.  First, while defendants are correct that the "default rule" under Rule 41(b) is that a dismissal for want of prosecution is an "adjudication on the merits" and thus a dismissal with prejudice, *see ,e.g., Mercadante v. Xe Servs.*, LLC, 323 F.R.D. 76, 82 (D.D.C. 2017),[16] this Court's Local Civil Rule 83.23, "Dismissal

---

[16] Fed. R. Civ. P. 41(b) provides:

> Involuntary Dismissal; Effect. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits.

for Failure to Prosecute," takes a different view. It provides that:

> An order dismissing a claim for failure to prosecute shall specify that *the dismissal is without prejudice*, *unless the Court determines that the delay in prosecution of the claim has resulted in prejudice to an opposing party*.

LCvR 83.23 (emphasis added). The effect of this rule is to "provide that dismissals for failure to prosecute *should be made without prejudice unless the delay in prosecution impairs the opposing party's interests*." *James v. Nationstar Mortgage LLC*, 323 F.R.D. 85, 87 (D.D.C. 2017) (emphasis added); *see also Evans v. Howard Univ.*, No. 17-cv-303, *slip op.* at 3 (D.D.C. Nov. 13, 2017) ("Defendant does not allege that its interests will be impaired by dismissal without prejudice; accordingly, the Court sees no reason to depart from this default rule."). There are thus two arguably conflicting default rules. Second, at the September 8, 2016 hearing, after the Court indicated that it would grant counsel's motion to withdraw, defendants orally moved for plaintiffs' claims to be dismissed for lack of prosecution, but they did not request a dismissal with prejudice or provide any basis why such a dismissal would be warranted. (9/8/2016 Tr. ("[G]iven [plaintiffs' failure to provide initial disclosures] and given the lack of interest in coming to the status hearing today[,] we[] would ask for that record that the matter be dismissed for lack of prosecution.").) Third, while the dismissal order itself does not cite to either Rule 41(b) or Local Rule 83.23, or state whether the dismissal was with or without prejudice, the transcript from the final hearing in the 2015 Litigation makes it clear that the Court anticipated that a dismissal for failure to prosecute would be without prejudice and, furthermore, that the Court made that clear to defendants' counsel at the hearing. (*See* 9/8/2016 Tr. (COURT: "If it is dismissed for lack of prosecution, it is without prejudice, I think." COUNSEL: "Understood, Your Honor.").) Finally, the Court's order to plaintiffs to show cause why the case should not be dismissed for lack of prosecution did not advise plaintiffs, who were proceeding *pro se* at that

point, that the dismissal would be with prejudice.  (*See* Order, 2015 Litigation, Sept. 8, 2016.)

Given these facts, the only possible conclusion is that Counts I-IV in the 2015 Litigation were dismissed without prejudice.  Indeed, given plaintiffs' *pro se* status and the lack of any apparent prejudice to defendants from the delay, a dismissal with prejudice would indeed have been unnecessarily "Draconian."  *See James*, 323 F.R.D. at 87; *see also e.g.*, *Seawright v. U.S. Postal Serv.*, No. 14-cv-01624, *3 (D.D.C. July 20, 2016) (dismissing without prejudice for failure to prosecute, despite the *pro se* plaintiff's failure to follow the court's orders and multiple opportunities to correct deficiencies and warnings, "so as not to permanently foreclose a properly fashioned suit").

Accordingly, the Court concludes that the claims in the current litigation are not barred by the doctrine of res judicata.

### B.    FTCA Judgment Bar

Defendants next argue that because this Court dismissed the FTCA claim in the 2015 Litigation (Count V), plaintiffs' current claims are barred by the FTCA's "judgment bar," 28 U.S.C. § 2676, which provides that:

> The judgment in an action under section 1346(b) of this title [the FTCA] shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim.

28 U.S.C. § 2676.

In the 2015 Litigation, the Court never entered "judgment" on plaintiffs' FTCA claim. The sole FTCA claim in 2015 Litigation was brought against Secretary McDonald in his official capacity as Secretary of the VA.  (*See* Compl. ¶¶ 96-98, 2015 Litigation.)  Defendants moved to dismiss the claim for lack of subject matter jurisdiction on the ground that an FTCA claim can only be brought against the United States, not a federal employee or agency.  *See Allen v. Brown*,

185 F. Supp. 3d at 10.  Plaintiffs conceded that defendants were correct, and the Court, agreeing, dismissed the FTCA claim for lack of subject matter jurisdiction.  *See Allen v. Brown*, 185 F. Supp. 3d at 10 ("Count V should have been filed against the United States as the FTCA does not authorize suits against federal officials or federal agencies.") (citing *Kissi v. Simmons*, No. 09-cv-1377, 2009 WL 3429567, at *1 (D.D.C. Oct. 22, 2009) ("the proper defendant to an action under the FTCA is the United States of America")).  A dismissal for lack of subject matter jurisdiction is not a "judgment on the merits."  *See* 10A C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 2713, p. 239 (3d ed. 1998) ("If the court has no jurisdiction, it has no power to enter a judgment on the merits."); Restatement (Second) of Judgments § 11, p. 108 (1980) ("A judgment may properly be rendered against a party only if the court has authority to adjudicate the type of controversy involved in the action.").  Accordingly, the dismissal of the FTCA claim in the 2015 Litigation was not a judgment under the FTCA, and the FTCA's judgment bar does not apply.

### C.     Statute of Limitations (Count 1)

Defendants argue that Counts 1, 2 and 3 are barred by the applicable statute of limitations.  Having already concluded that Counts 2 and 3 must be dismissed for failure to exhaust administrative remedies, the Court will limit its discussion to Count 1.

"A court may only rule on a statute of limitations defense when the face of the complaint conclusively indicates it is time-barred."  S*ykes v. U.S. Att'y for D.C.*, 770 F. Supp. 2d 152, 154 (D.D.C. 2011).  That is not the situation here.

A civil claim under the federal wiretapping statute "may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation."  18 U.S.C. § 2520(e).  Defendants argue that Count 1 is barred by this two-year limitations period because "[p]laintiffs have, in essence, admitted that by January 24, 2014 they

had 'the first reasonable opportunity to discover the violation,'" yet the pending case was not filed until September 22, 2017. (Defs.' Mem. at 14 (citing Am. Compl. ¶ 36, which states "On January 24, 2014, various officers found a camera with a microphone covertly mounted on a support bracket for the CCTV monitors with a microphone hidden behind the monitors.").) Plaintiffs take the position that Count 1 is a tort that involves "continuing injury," so "the cause of action accrues, and the limitations period begins to run, at the time the tortious conduct ceases." (Pls.' Opp'n at 26.)

Defendant's argument is not persuasive. Under their view, plaintiffs' discovery of the surveillance equipment (in a single location) on January 24, 2014, would bar any federal wiretapping claim filed after January 24, 2016, even if the claim were based on surveillance that took place at different locations or at later dates, including dates within two years of when this case was filed. In other words, if plaintiffs failed to sue before January 24, 2016, defendants would be able to continue their allegedly unlawful conduct indefinitely. This argument is contrary to the law of this jurisdiction. *See Page v. United States*, 729 F.2d 818, 821 (D.C. Cir. 1984) ("knowledge acquired in 1972 that one has a claim could not trigger time limitations on allegedly tortious conduct that had not then occurred").

In addition, defendants' argument assumes that an extended period of surveillance in multiple locations only constitutes a single violation of the wiretapping statute, but there is authority, arguably endorsed by the D.C. Circuit, that each interception is a discrete violation. *See Sparshott v. Feld Entm't, Inc.*, 311 F.3d 425, 431 (D.C. Cir. 2002) (dismissing federal wiretap claim where there were "no incidents of wiretapping which occurred within two years of the plaintiffs' filing suit"); *see also Fultz v. Gilliam*, 942 F.2d 396, 402 (6th Cir. 1991) ("The text of the Wiretapping Act plainly indicates, and its purpose necessitates, that a new and discrete

cause of action accrue under section 2511(1)(c) each time a recording of an unlawfully intercepted communication is played to a third party who has not yet heard it.")  If that is the case, then interceptions that took place more than two years before the complaint was filed would be barred by the statute of limitations while those that took place within two years would not be.

Plaintiffs suggest an alternative approach, arguing that the surveillance should be treated as a "continuing injury," and that since the complaint alleges that interceptions continued until as late as September 2017, no part of Count 1 is barred by the two-year statute of limitations.

Under either approach, it is not apparent from the face of the complaint that the entirety of Count 1 would be barred by the statute of limitations.  But if it turns out that no surveillance took place after September 22, 2015, as defendants maintain, Count 1 will be barred under either approach.  Accordingly, the Court will hold in abeyance defendants' statute of limitations challenge to Count 1 to allow limited discovery on the discrete issue of when the surveillance ceased for that may eliminate the need to resolve whether the alleged surveillance should be considered a series of discrete violations or a "continuing injury."[17]

## IV.     SUMMARY JUDGMENT

Having found no basis for dismissing Counts 1 and 4, the Court will consider defendants' arguments for summary judgment.

### A.      Federal Wiretapping Claim (Count 1)

As they did in the 2015 Litigation, defendants argue that they are entitled to summary

---

[17] If it should turn out that no surveillance took place after September 22, 2014, Count 4 would be barred by the three-year statute of limitations from D.C. Code § 12–301(8), which is applicable to Fourth Amendment *Bivens* claims in the District of Columbia.  *See, e.g.*, *Berman v. Crook*, 293 F. Supp. 3d 48, 56 (D.D.C. 2018) (citing *Banks v. Chesapeake and Potomac Telephone Co.,* 802 F.2d 1416, 1429 (D.C. Cir. 1986)).

judgment on Count 1 because the federal wiretapping statute does not apply to video-only surveillance and the evidence they have submitted to support their motion for summary judgment establishes that there were no audio recordings. Plaintiffs challenge both defendants' interpretation of the statute (which they did not do in the 2015 Litigation) and their contention that the absence of audio recording can be treated as an undisputed fact before any formal discovery has occurred.

### 1. Statutory Interpretation

The federal wiretapping statute provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate."[18]  18 U.S.C. § 2520.  The statute defines a "wire communication" as "any aural transfer made . . . through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception . . . ." 18 U.S.C. § 2510(1).  An "oral communication" is defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation . . . ." 18 U.S.C. § 2510(2).  An "electronic communication" is "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted . . . by a wire . . . ." 18 U.S.C. § 2510(12).

---

[18] Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90–351, 82 Stat. 212, was amended and retitled by Title I of the Electronic Communications Privacy Act of 1986, Pub. L. No. 99–508, 100 Stat. 1851 (Title I).  *See United States v. Koyomejian,* 970 F.2d 536, 539 n.1 (9th Cir. 1992).  Thus, cases discussing the federal wiretapping statute will use the shorthand of "Title III" or "Title I" to refer to the same statutory provisions.  *See, e.g.*, *United States v. Jackson*, 213 F.3d 1269, 1280 (10th Cir. 2000).

In the 2015 Litigation, plaintiffs conceded that silent video surveillance is not a "wire, oral, or electronic communication" as defined by the federal wiretapping statute and, therefore, that the absence of audio recording would doom their federal wiretapping claim. *See Allen v. Brown*, 185 F. Supp. 3d at 6. Now, though, they apparently take a different view, asserting that "even if there were only video surveillance of the Plaintiffs, Defendants have failed to establish that they are entitled to summary judgment." (*See* Pls.' Opp'n at 20.)

Plaintiffs fail to identify any legal authority in support of their position. Rather, they suggest that defendants' position should be rejected because they "have not cited any controlling authority establishing that . . . Title I does not prohibit the use of silent video surveillance" and they rely "primarily" on a decision by a Kansas District Court, *Thompson v. Johnson Cty. Cmty. Coll.*, 930 F. Supp. 501 (D. Kan. 1996). (Pls.' Opp'n at 20.) While plaintiffs are correct that there is no *controlling* precedent in this Circuit, there are numerous cases supporting defendants' interpretation. Indeed, *every* federal appeals or district court to have considered the question has concluded that silent video surveillance is not covered by the federal wiretapping statute." *See, e.g.*, *United States v. Falls*, 34 F.3d 674, 679–80 (8th Cir. 1994) ("Title I . . . neither regulate[s] nor prohibit[s] domestic silent video surveillance"); *United States v. Koyomejian*, 970 F.2d 536, 538 (9th Cir. 1992) ("Title I does not address silent video surveillance"); *United States v. Jackson*, 213 F.3d 1269, 1280 (10th Cir. 2000) ("Title I does not regulate [silent video surveillance]".), *judgment vacated on other grounds*, 531 U.S. 1033 (2000); *United States v. Batiste*, No. 06-cr-20373, 2007 WL 2412837, at *7 (S.D. Fla. Aug. 21, 2007) ("The federal wiretap law does not cover video surveillance where no audio recording is made."), adopted by *United States v. Abraham*, 2007 WL 9653096 (S.D. Fla. Oct. 1, 2007); *United States v. Andonian*, 735 F. Supp. 1469 (C.D. Cal. 1990) (statute "does not address video surveillance

because the statute only governs 'the interception of wire or oral communications'"), *aff'd and remanded*, 29 F.3d 634 (9th Cir. 1994).

As various courts have explained, this conclusion is based on both the "plain meaning" of the statutory definitions of "wire, oral, or electronic communication" and the "legislative history" of the statute. *Koyomejian*, 970 F.2d at 539 ("plain meaning" of the statutory definitions of "wire, oral, or electronic communication," "does not include silent video surveillance"); *id.* ("The legislative history of Title I also indicates the statute does not regulate silent video surveillance.")[19]; *United States v. Taketa*, 923 F.2d 665, 675 (9th Cir. 1991) ("Since the videotaping did not intercept the contents of any communications, it did not violate [the federal wiretapping statute]."); *United States v. Larios*, 593 F.3d 82, 90 (1st Cir. 2010) ("We agree with our sister circuits that, by its plain meaning, the text of [the statute] does not apply to silent video surveillance" and "the legislative history of the statute and its more recent amendments indicate that Congress did not intend the statute to regulate video surveillance.").

The reasoning of these courts is persuasive. Accordingly, the Court rejects plaintiffs' suggestion that the federal wiretapping statute applies to silent video surveillance.

---

[19] The 1986 Senate Report on Title I states:

> *[I]f law enforcement officials were to install their own cameras and create their own closed circuit television picture of a meeting, the capturing of the video images would not be an interception* under the statute because there would be no interception of the contents of an electronic communication. Intercepting the audio portion of the meeting would be an interception of an oral communication, and the statute would apply to that portion.

S. Rep. No. 541, 99th Cong., 2d Sess. 16-17, *reprinted in* 1986 U.S.C.C.A.N. 3555, 3570-71 (emphasis added).

## 2. Disputed v. Undisputed Material Fact

Plaintiffs' alternative argument against summary judgment on Count 1 fares better. According to defendants, the absence of audio recording should be considered an undisputed fact because "mere supposition of audio recording is insufficient" and "there is nothing beyond the unsupported statements, devoid of personal knowledge, that can support a claim that any audio recording was made." (Defs.' Mem. at 12-13.) Plaintiffs counter that a "virtually identical argument[]" was previously rejected by the Court in the 2015 Litigation on the ground that plaintiffs were entitled to discovery on this issue and that the Court should reach the same conclusion here, especially as the current record includes "additional evidence of audio recording." (Pls.' Opp'n at 18-19.)

Plaintiffs have resubmitted the same declarations as were filed in the 2015 Litigation, so the evidence of audio recording is, in fact, unchanged. The Court's conclusion from the 2015 Litigation is still applicable, and, as it explained then, while defendants have submitted significant evidence to support their contention that no audio recording took place, plaintiffs have produced enough countervailing evidence to preclude summary judgment, especially given the necessity of construing all inferences in plaintiffs favor and plaintiffs submission of a Rule 56(d) declaration requesting document discovery and depositions in order to be able to access any other relevant evidence. *See Allen v. Brown*, 185 F. Supp. 3d at 6-7.

## B. Fourth Amendment *Bivens* Claim Against Chief Brown (Count 4)

In *Bivens*, the Supreme Court established that federal officials can be sued in their individual capacities for damages for actions taken under the color of law that violate the Fourth Amendment. 403 U.S. at 395. However, the doctrine of qualified immunity protects government officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) ("Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful.").  Defendants argue, as they did in the 2015 Litigation, *see Allen v. Brown*, 185 F. Supp. 3d at 8, that they are entitled to summary judgment on the *Bivens* claim against Chief Brown either because (1) plaintiffs did not have a "reasonable expectation of privacy" from covert audio and video surveillance in the locations at issue so there was no Fourth Amendment violation; or (2) Chief Brown is entitled to qualified immunity because even if the surveillance violated plaintiffs' Fourth Amendment rights, those rights are not "clearly established."

### 1. Fourth Amendment Violation

The Fourth Amendment's protection "against unreasonable searches and seizures" "applies . . . when the government acts in its capacity as an employer."  *City of Ontario v. Quon*, 560 U.S. 746, 756 (2010); *see O'Connor v. Ortega*, 480 U.S. 709, 717 (1987).  Under the plurality opinion in *O'Connor*, which has been adopted by the D.C. Circuit, *see Stewart v. Evans*, 351 F.3d 1239, 1243 (D.C. Cir. 2003), when a government as employer conducts a search or seizure for "noninvestigatory, work-related purposes" or for "investigations of work-related misconduct," the standard for determining whether that search or seizure is reasonable depends on the answer to two questions.  *See O'Connor*, 480 U.S. at 717-24.  The first question is whether, considering the "operational realities of the workplace" "on a case-by-case basis," the employee has a "reasonable expectation of privacy" in the intruded-upon space.  *Id*. at 717-18.  If the answer to that question is yes, Fourth Amendment protections apply, and courts proceed to the question of whether the employer's intrusion was "reasonable[] under all the circumstances." *Id.* at 725-26; *see also City of Ontario*, 560 U.S. at 756-57.  "Under this reasonableness standard, both the inception and the scope of the intrusion must be reasonable."  *O'Connor*, 480 U.S. at

726.

To support their claim that the alleged surveillance did not violate the Fourth Amendment, defendants continue to rely on a case from Kansas, where the court rejected a "similar" *Bivens* claim when it "rejected the claims that . . . warrantless video surveillance searches of the security personnel locker area violated [plaintiff officers] Fourth Amendment rights."  (Defs.' Mem. at 26-27 (citing *Thompson*).)  After quoting extensively from *Thompson*, defendants assert that the facts in *Thompson* are "similar to the circumstances at issue in the instant action" and, therefore, that "there was no reasonable expectation of privacy and the use of the video for a limited time to address potential workplace misconduct was appropriate."  (*Id*. at 27-28 (citing Brown Decl. ¶¶ 2-21).)

The Court extensively discussed and then rejected this same argument in the 2015 Litigation, ultimately concluding that:

> It is not apparent from the existing record, viewed in the light most favorable to plaintiffs, that the undisputed facts establish either that plaintiffs lacked a reasonable expectation of privacy in their conversations or their actions in the rooms where the surveillance allegedly occurred or that, if they had a reasonable expectation of privacy, the search was reasonable in both its inception and its scope. Given that plaintiffs have not yet had the opportunity to take discovery, and considering the disputed facts viewed in the light most favorable to the plaintiffs, the Court cannot find that defendants' surveillance did not violate the Fourth Amendment.

*See Allen v. Brown*, 185 F. Supp. 3d at 9.

The record here is the same as it was in the 2015 Litigation, and the Court continues to find it inadequate to draw the conclusion defendants seek.  "[T]he inquiry into reasonableness must be made on a case-by-case basis," and it must be based upon an adequate record.  *See Stewart v. Evans*, 275 F.3d 1126, 1130–31 (D.C. Cir. 2002) (reversing dismissal and remanding because "[w]ithout knowing more about the circumstances surrounding the search, a court

simply cannot assess whether it was reasonable.")  Under these circumstances, the Court cannot, at this stage, grant summary judgment to defendants on the issue of whether Chief Brown's conduct violated plaintiffs' Fourth Amendment rights.

## 2. Qualified Immunity

Defendants' qualified immunity argument is similarly premature.  Chief Brown is entitled to qualified immunity unless his conduct violated "clearly established" rights.  And, as the Supreme Court's recent decision in *Wesby* emphasized "[c]learly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful."  *Wesby*, 138 S. Ct. at 589–90.  But, without knowing the facts surrounding each surveillance, not only can it not be determined whether there was a Fourth Amendment violation, it cannot determined whether any such violation violated clearly established rights.  *See Hedgpeth v. Rahim*, 893 F.3d 802, 806 (D.C. Cir. 2018)) ("'clearly established law should not be defined at a high level of generality,' but 'must be particularized to the facts of the case'" (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)).  For example, if it turns out that there was video surveillance in the Watch Commander's Office and that it was known that officers used that space as a changing area, that could arguably have constituted a violation of clearly established rights.[20]  *See, e.g.*, *Jones v. Houston Cmty. Coll. Sys.*, 816 F. Supp. 2d 418, 436, 437 (S.D. Tex. 2011) ("a reasonable . . . official would have had fair notice that using a covert video surveillance camera secretly to monitor and record female security officers in an office where they changed clothes—an office routinely used as a part-time locker room—was unconstitutional"); *Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094, 1101-09

---

[20] Of course, this assume that surveillance occurred within three years of filing suit.  *See supra* note 17.

(C.D. Cal. 2006) (police officers who were secretly videotaped in locker room had reasonable expectation of privacy and search was not reasonable); *Bernhard v. City of Ontario*, 270 F. App'x 518, 519 (9th Cir. 2008) ("[R]easonable persons, including police officers, do not expect to be secretly videotaped by other police officers while changing clothes in their workplace locker rooms."). Accordingly, the Court cannot at this point grant summary judgment to defendants on the issue of whether Chief Brown is protected by the doctrine of qualified immunity.

## V. FUTURE PROCEEDINGS

As previously discussed, there are two potentially dispositive issues with respect to the viability of Count 1, which may be resolved with limited discovery: (1) whether there was audio surveillance (if not, the federal wiretapping statute does not apply, *see supra* Section IV.A); and (2) what, if any, audio surveillance took place on or after September 22, 2015 (if not, Count 1 is barred by the two-year statute of limitations, *see supra* Section III.C). In addition, it appears that Count 4 would be barred by the applicable three-year statute of limitations if no surveillance took place on or after September 22, 2014. Further, whether surveillance even occurred in the Watch Commander's Office will bear on the Fourth Amendment analysis.

Accordingly, the Court will permit limited discovery on the following issues:

(1) the existence, location and duration of any audio recording in the three rooms identified in the complaint;

(2) the date when the admitted video surveillance in the Police Control Room and the Police Report Writing Room ceased; and

(3) the existence and duration of any video surveillance in the Watch Commander's Office.

If appropriate, after discovery on these issues, defendants will be given an opportunity to

renew their motion for summary judgment on Count 1 or Count 4.

**CONCLUSION**

For the reasons stated above, the Court will grant in part and deny in part defendants'
motion to dismiss or, in the alternative, for summary judgment.  The Secretary of the VA is
dismissed as a defendant as no claim is brought against him.  The two state law claims -- Count 2
(the D.C. wiretapping claim) and Count 3 (the civil conspiracy claim under D.C. law) -- which
have been converted into claims against the United States governed by the FTCA, are dismissed
without prejudice for lack of subject matter jurisdiction due to plaintiffs' failure to adequately
plead administrative exhaustion.  Count 1 (the federal wiretapping claim) and Count 4 (the
Fourth Amendment *Bivens* claim) are not subject to dismissal for failure to state a claim, and
ruling on summary judgment at this stage would be premature, but defendants will be allowed to
renew their motion for summary judgment if appropriate after the conclusion of a period of
limited discovery.  A separate Order accompanies this Memorandum Opinion.

ELLEN S. HUVELLE
United States District Judge

Date:   August 1, 2018